IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

RICHARD M. GILMAN,

    Petitioner,               No. 2:08-cv-0592-JAM-JFM (HC)

   vs.

M. KNOWLES, Warden,

    Respondent.            FINDINGS AND RECOMMENDATIONS

_____/

         Petitioner is a state prisoner proceeding pro se with an application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner claims that his right to due process was violated by the issuance of two chronos, a CDC-128-B written by J. Khattra, RN, on September 13, 2006, and a CDC-128-A counseling chrono written by Correctional Sergeant K. Osborne on September 19, 2006, both of which have been maintained in his prison central file. Petitioner seeks expungement of the chronos and contends that their continued presence in his central file will likely affect his eligibility for a finding that he is suitable for parole. Respondent contends that the court lacks jurisdiction over this petition because success on the claim would not affect the fact or duration of petitioner's confinement. Respondent also contends that petitioner has not shown that the state courts' rejection of the claim at bar was contrary to or an unreasonable application of clearly established federal law.

1

FACTS

Petitioner is serving a sentence of twenty-five years to life in prison with the possibility of parole following his 1982 conviction on multiple state criminal charges. See Ex. 1 to Answer, filed July 14, 2008, at 2. Petitioner has been eligible for parole since July 22, 1995, but he has not been granted a parole date. Ex. 7 to Answer, filed July 14, 2008, at 1, 57. On September 13, 2006, the following CDC-128-B chrono, signed by J. Khattra, RN, was issued:

> On September 12, 2006 at approximately 1745 hours the following circumstances occurred; Inmate GILMAN (CDC# C-47508) has had an order for daily blood pressure checks and daily FSBS/insulin in B-1 Clinic. He (Inmate GILMAN) came to B-1 Clinic today at approximately 1745 hours for blood pressure check and FSBS/insulin. I have advised Inmate GILMAN on many occasions to not touch any of the medical record books in B-1 Clinic. He continues to ignore my advice regarding this issue. After having his blood pressure taken today, Inmate GILMAN opened the blood pressure book and began flipping through the pages. I took the book from him and told him I would record his blood pressure. I then asked him what his blood pressure was [sic] he then pointed toward the blood pressure monitor and said, "It's over there." He became upset with me and told my shift leader RN Naidoo that he did not want me to attend to him anymore. He said he would "rather drop dead" than be attended to by me. He also told RN Naidoo that he would be filing a "602" on me.

Ex. to Petition for Writ of Habeas Corpus, filed March 17, 2008. On September 19, 2006, the following CDC-128-A Counseling Chrono, signed by Unit IV Correctional Sergeant K. Osborne, was issued:

> On September 12, 2006, at approximately 1745 hours, RN Khattra the Nurse in B-1 Clinic informed me that during I/M GILMAN'S, C-47508 YD-118L, visit to B-1 Clinic for blood pressure check, he became very argumentative when told to not touch the book where the blood pressures are recorded for all inmates. RN Khattra stated that she has informed I/M GILMAN to leave the book alone on several occasions. Please see attached CDC 128A. When I questioned I/M GILMAN about this behavior he again became argumentative stating" [sic] I would rather die than have them touch me again in B-1." I informed him that he was not to touch the blood pressure book anymore and to allow the B-1 staff to take his blood pressure for him. He then stated "Fine, then I just won't go to B-1 anymore." I informed him that it was his right to refuse treatment but no one was refusing to treat him. I stated that if

/////

> medical necessity require it, I would have him escorted to B-1 staff.
>
> On September 19, 2006 at approximately 1430 hours I was contacted by B-1 staff stating that I/M GILMAN'S blood pressure was extremely high and he was not getting his finger stick for his diabetes. They suspect that I/M GILMAN was deliberately not taking his blood pressure medications to cause a lawsuit against CMF, the B-1 staff and this writer. I/M GILMAN states that he was restricted from B-1 and Sergeant Osborne must escort him to B-1. I/M GILMAN has repeatedly stated that he was a lawyer on the streets and that if we continue to treat him this way he would take us all to court' [sic]. A [sic] approximately 1500 hours I informed I/M GILMAN that I never told him I would escort him to B-1 and that I would need to document these actions/conservation on a CDC-128A. I/M GILMAN stated that if I did he would take me to court because he goes to the Board of Prison Terms soon and he does not want anything ion [sic] his file.

Ex. to Petition. On September 19, 2006, petitioner filed an inmate grievance seeking "[a] clear and unambiguous statement from Sgt. Osborne as to my status to go to the clinic for my medical needs." Ex. to Petition, CDC 602 Log No. 06-M-2013. Petitioner's grievance was granted in part in that his allegations were investigated at each level of administrative review; no staff misconduct was found. Id.

Petitioner filed a petition for writ of habeas corpus at each level of the state court system claiming that his right to due process was violated by the placement of both chronos in his central file. The last reasoned rejection of the claim is the August 8, 2007 decision of the Solano County Superior Court, which rejected the claim on the ground that "[d]ue process protections are not required for the filing of CDC 128s (_In re Boag_ (1970) 35 Cal.App.3d 866)." Ex. to Petition, In re the application of RICHARD M. GILMAN, C-47508, Order on Petition for Writ of Habeas Corpus, filed Aug. 8, 2007.

## ANALYSIS

I. <u>Standards for a Writ of Habeas Corpus</u>

Federal habeas corpus relief is not available for any claim decided on the merits in state court proceedings unless the state court's adjudication of the claim:

3

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Under section 2254(d)(1), a state court decision is "contrary to" clearly established United States Supreme Court precedents if it applies a rule that contradicts the governing law set forth in Supreme Court cases, or if it confronts a set of facts that are materially indistinguishable from a decision of the Supreme Court and nevertheless arrives at different result. Early v. Packer, 537 U.S. 3, 7 (2002) (citing Williams v. Taylor, 529 U.S. 362, 405-406 (2000)).

Under the "unreasonable application" clause of section 2254(d)(1), a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from the Supreme Court's decisions, but unreasonably applies that principle to the facts of the prisoner's case. Williams, 529 U.S. at 413. A federal habeas court "may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 412; see also Lockyer v. Andrade, 538 U.S. 63, 75 (2003) (internal citations omitted) (it is "not enough that a federal habeas court, in its independent review of the legal question, is left with a 'firm conviction' that the state court was 'erroneous.'")

The court looks to the last reasoned state court decision as the basis for the state court judgment. Avila v. Galaza, 297 F.3d 911, 918 (9th Cir. 2002). Where the state court reaches a decision on the merits but provides no reasoning to support its conclusion, a federal habeas court independently reviews the record to determine whether habeas corpus relief is available under section 2254(d). Delgado v. Lewis, 223 F.3d 976, 982 (9th Cir. 2000).

4

## II. Petitioner's Claim

As noted above, respondent contends that the court lacks habeas corpus jurisdiction because success on his claim would have no impact on the fact or duration of petitioner's confinement. Specifically, respondent contends that the potential effect of the challenged chronos on the Board's determination of whether petitioner should be found suitable for parole is "too attenuated" to support habeas corpus jurisdiction. Answer at 10.

Section 2254(a) of Title 28 of the United States Code provides:

> The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.

28 U.S.C. § 2254(a). The "in custody" requirement of § 2254 is jurisdictional. See Bailey v. Hill, __ F.3d __, 2010 WL 1133435 (9th Cir. 2010), slip op. at 2.

> The plain meaning of the text of § 2254(a) makes clear that physical custody alone is insufficient to confer jurisdiction. Section 2254(a)'s language permitting a habeas petition to be entertained "only on the ground that [the petitioner] is in custody *in violation of the Constitution or laws or treaties of the United States*," (emphasis added), explicitly requires a nexus between the petitioner's claim and the unlawful nature of the custody. See Dickerson v. United States, 530 U.S. 428, 439 n. 3, 120 S.Ct. 2326, 147 L.Ed.2d 405 (2000) ("Habeas corpus proceedings are available only for claims that a person 'is in custody in violation of the Constitution or laws or treaties of the United States.' " (quoting 28 U.S.C. § 2254(a))).

Bailey, slip op. at 3. The requirement that there be a nexus between a claim and unlawful custody ensures a nexus between violation of federal law and any available remedy. See id.[1]

In Bostic v. Carlson, 884 F.2d 1267 (9th Cir. 1969), the United States Court of Appeals held that "'[h]abeas corpus jurisdiction . . . exists when a petitioner seeks expungement

---

[1] In Bailey, the United States Court of Appeals for the Ninth Circuit held that there was an insufficient nexus between custody and a restitution order to permit a challenge to such an order in a § 2254 proceeding.

of a disciplinary finding from his record if expungement is *likely to accelerate* the prisoner's eligibility for parole.'" Bostic, 884 F.2d at 1269 (quoted in Docken v. Chase, 393 F.3d 1024, 1028 (9th Cir. 2004). In Docken, the court of appeals interpreted "*Bostic's* use of the term 'likely' to identify claims with a sufficient nexus to the length of imprisonment so as to implicate, but not fall squarely within, the 'core' challenges identified by the *Preiser* Court."[2] Docken, at 1031. From that interpretation, the court held that relief is available under the federal habeas corpus statute to inmates "challenging aspects of their parole review that, so long as they prevail, *could* potentially affect the duration of their confinement." Id. (emphasis in original).

While "serious misconduct in prison or jail" is one of the "circumstances tending to show unsuitability for parole" that the Board considers when deciding whether to grant a parole date, see 15 Cal. Code Regs. § 2402(c)(6), petitioner acknowledges that the chronos do not describe "serious misconduct." Traverse, filed September 25, 2008, at 8. The chronos do not fall within any of the other criteria suggesting unsuitability for parole. See 15 Cal. Code Regs. § 2402(c). Nor is there any evidence in the record that the chronos have been considered by the Board in connection with any parole hearing conducted after they were issued.[3] This court finds that there is no evidence of any nexus between the challenged chronos and the length of petitioner's confinement. Accordingly, this action should be dismissed for lack of jurisdiction.

Pursuant to Rule 11 of the Rules Governing Section 2254 Cases in the United States District Courts, "[t]he district court must issue or a deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11, 28 U.S.C. foll. § 2254. A certificate of

---

[2] In Preiser v. Rodriguez, 411 U.S. 475 (1973), the United States Supreme Court defined "suits 'challenging the fact or duration of . . . physical confinement' and seeking 'immediate release or speedier release from that confinement' as the 'heart of habeas corpus'." Docken, at 1027 (quoting Preiser, at 498).

[3] The chronos were not considered by the Board at petitioner's October 19, 2006 parole suitability hearing. At that hearing, he received a two-year denial of parole. Ex. 7 to Answer, at 67. There is no evidence whether petitioner has had any subsequent parole consideration hearing since the October 2006 hearing and, accordingly, no evidence that the chronos have ever been considered by the Board in connection with a decision to deny petitioner parole.

appealability may issue under 28 U.S.C. § 2253 "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The court must either issue a certificate of appealability indicating which issues satisfy the required showing or must state the reasons why such a certificate should not issue. Fed. R. App. P. 22(b). For the reasons set forth in these findings and recommendations, petitioner has not made a substantial showing of the denial of a constitutional right. Accordingly, no certificate of appealability should issue.

In accordance with the above, IT IS HEREBY RECOMMENDED that:

1. This action be dismissed for lack of jurisdiction; and

2. The district court decline to issue a certificate of appealability.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any response to the objections shall be filed and served within fourteen days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: April 22, 2010.

UNITED STATES MAGISTRATE JUDGE

12
gilm0592.157